**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, AND ERICSSON AB**<br><br>**Plaintiff,**<br><br>v.<br><br>**SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.,**<br><br>**Defendants.** | **Civil Action No.  2:21-cv-1**<br><br><br>**JURY TRIAL** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Ericsson Inc., Telefonaktiebolaget LM Ericsson, and Ericsson AB (collectively, "Ericsson") file this Original Complaint for Patent Infringement against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), and allege as follows:

### The Parties

1.      Plaintiff Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

2.      Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

3.      Plaintiff Ericsson AB is a corporation under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 23, Kista, 16480, Stockholm, Sweden.

4.    Ericsson owns a valuable portfolio of patents that are globally used in cellular handsets, smartphones, tablet computers, televisions, and many other electrical devices.

5.    Defendant Samsung Electronics Co., Ltd. ("SEC") is a Korean company with its principal place of business in Suwon, South Korea. SEC has an "Information Technology & Mobile Communications" division that is responsible for the design, manufacture, and sale of mobile devices, such as smartphones that operate on cellular networks around the world and in the United States.

6.    Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business in Ridgefield Park, New Jersey, and it is a wholly-owned subsidiary of SEC. SEA imports into the United States and sells in the United States, including in this District, smartphones that operate on cellular networks in the United States.

## Jurisdiction and Venue

7.    This is an action arising under the patent laws of the United States, 35 U.S.C. § 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8.    Venue proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

9.    This Court has personal jurisdiction over Defendants Samsung. Samsung has continuous and systematic business contacts with the State of Texas. Samsung, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), has negotiated with Ericsson in this District, and also conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and/or services in the State of Texas and the Eastern District of Texas. SEA, SEC's wholly-owned subsidiary, maintains an office in Plano,

2

Texas, and is responsible for importing and selling smartphones, tablets, other mobile devices, and cellular network infrastructure equipment that operate on cellular networks in the United States, as well as televisions with wireless connectivity. SEC and SEA regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in the State of Texas.

10.     SEC and SEA, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.

11.     On information and belief the Samsung products accused of infringement in this case are manufactured, in whole or in part, by Samsung Electronics Thai Nguyen Co. Ltd., Samsung Electronics Vietnam Co., Ltd., and Samsung Electronics HCMC CE Complex, Co., Ltd., which are subsidiaries of Defendant Samsung Electronics Co., Ltd.

12.     Ericsson Inc. is a corporation with its principal place of business in the Eastern District of Texas. Ericsson Inc. is a wholly-owned subsidiary of LME, and is responsible, among other things, for importing and selling cellular network infrastructure equipment to cellular carriers in the United States.

## The Asserted Patents

13.     U.S. Patent No. 7,151,430, entitled "Method of and Inductor Layout for Reduced VCO Coupling," was duly and legally issued to inventor Thomas Mattson on December 19,

2006. Ericsson owns by assignment the entire right, title, and interest in the '430 patent and is entitled to sue for past and future infringement.

14.     U.S. Patent No. 6,879,849, entitled "In-Built Antenna for Mobile Communication Device," was duly and legally issued to inventor Stjepan Begic on April 12, 2005. Ericsson owns by assignment the entire right, title, and interest in the '849 patent and is entitled to sue for past and future infringement.

15.     U.S. Patent No. 7,286,823, entitled "Mobile Multimedia Engine," was duly and legally issued to inventors Mikael Reinholdsson, Erik Ledfelt, and Johan Svener on October 23, 2007. Ericsson owns by assignment the entire right, title, and interest in the '823 patent and is entitled to sue for past and future infringement.

16.     U.S. Patent No. 9,313,178, entitled "Method and System for Secure Over-the-top Live Video Delivery," was duly and legally issued to inventors Kevin J. Ma, Robert Hickey, and Paul Tweedale on April 12, 2016. Ericsson owns by assignment the entire right, title, and interest in the '178 patent and is entitled to sue for past and future infringement.

### Count I: Claim for Patent Infringement of the '430 Patent

17.     Ericsson repeats and realleges the allegations in paragraphs 1-16 as if fully set forth herein.

18.     Samsung has infringed, contributed to the infringement of, and/or induced infringement of the '430 patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '430 Patent, and products which are made by a process covered by one or more claims of the '430 Patent, including, but not limited to, smartphones and other mobile devices and televisions with wireless

4

connectivity. The accused electronic devices with wireless connectivity that infringe one or more claims of the '430 patent include, but are not limited to, at least the Samsung Galaxy S20+5G and Samsung's The Frame, The Terrace, Q70T, Q80T, Q90T, Q800T, Q900TS, 32Q50, Q60T, TU8000, and TU8300 smart TVs.

19.    For example, at least the Samsung Galaxy S20+5G and the Samsung 32Q50 Smart TV infringe at least claims 1, 11, and 20 of the '430 patent. Samsung makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '430 patent, and thus directly infringes the '430 patent.

20.    Samsung indirectly infringes the '430 patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Samsung Galaxy S20+5G and the Samsung 32Q50 Smart TV, who perform each step of the claimed invention as directed by Samsung. Samsung received actual notice of the '430 patent at least as early as the filing of this Complaint.

21.    Samsung's affirmative acts of selling the Galaxy S20+5G and the Samsung 32Q50 Smart TV, causing the Samsung Galaxy S20+5G and the Samsung 32Q50 Smart TV to be manufactured, and providing directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Samsung Galaxy S20+5G and the Samsung 32Q50 Smart TV in a manner that directly infringes the '430 patent. Through its manufacture and sales of the Galaxy S20+5G and the Samsung 32Q50 Smart TV, Samsung

NG-9J84MDUI 4848-6787-5541v6

performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

22.     Samsung also indirectly infringes the '430 patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Samsung Galaxy S20+5G and the Samsung 32Q50 Smart TV.

23.     Samsung's affirmative acts of selling the Galaxy S20+5G and the 32Q50 Smart TV and causing the Galaxy S20+5G and the 32Q50 Smart TV to be manufactured and sold contribute to Samsung's manufacturers, resellers, and end-users making or using the Galaxy S20+5G and the 32Q50 Smart TV in a normal and customary way that infringes the '430 patent. The Galaxy S20+5G and the 32Q50 Smart TV constitutes the material part of Ericsson's patented invention, has no substantial non-infringing uses, and is known by Samsung to be especially made or especially adapted for use to infringe the '430 patent.

24.     The Samsung Galaxy S20+5G uses the Broadcom BCM4375 Dual-Band 802.11ax Wi-Fi/Bluetooth Combo Chip, which includes an inductor layout having reduced mutual electromagnetic coupling on the semiconductor die.

25.     The Samsung Galaxy S20+5G includes at least one first inductor having a reduced far field that includes a first loop having a shape that is substantially symmetrical about a first predefined axis. The Samsung Galaxy S20+5G also has a second loop that is connected to and substantially identical in shape and size to the first loop. The second loop is arranged such that a magnetic field emanating therefrom tends to cancel a magnetic field emanating from the first loop. The direction and orientation of the electrical current flowing through the two loops

6

results in such a manner as to cancel a magnetic field emanating from the first loop. The image below depicts at least one first inductor of the Samsung Galaxy S20+5G comprising a first and second loop:



A first inductor

26.     The Samsung Galaxy S20+5G includes two closely spaced terminals connected to the first loop for supplying electrical current to the first and second loops while minimizing magnetic field contributions from the terminals.

27.     The Samsung Galaxy S20+5G also includes at least one second inductor positioned at a predetermined distance from the first inductor, wherein a mutual electromagnetic coupling between the first inductor and the second inductor is reduced as a result of the first inductor having a reduced electromagnetic field. The image below depicts the relative position of the first and second inductors in the Samsung S20+5G:

7



28.    The Samsung 32Q50 Smart TV uses the Samsung WCP730M module, which includes the MediaTek MT7668 chip with an inductor layout having reduced mutual electromagnetic coupling on the semiconductor die.

29.    The Samsung 32Q50 Smart TV includes at least one first inductor having a reduced far field that includes a first loop having a shape that is substantially symmetrical about a first predefined axis. The Samsung 32Q50 Smart TV also has a second loop that is connected to and substantially identical in shape and size to the first loop. The second loop is arranged such that a magnetic field emanating therefrom tends to cancel a magnetic field emanating from the first loop. The direction and orientation of the electrical current flowing through the two loops results in such a manner as to cancel a magnetic field emanating from the first loop. The image

8

below depicts at least one first inductor of the Samsung 32Q50 Smart TV comprising a first and second loop:



30.     The Samsung 32Q50 Smart TV includes two closely spaced terminals connected to the first loop for supplying electrical current to the first and second loops while minimizing magnetic field contributions from the terminals.

31.     The Samsung 32Q50 Smart TV also includes at least one second inductor positioned at a predetermined distance from the first inductor, wherein a mutual electromagnetic coupling between the first inductor and the second inductor is reduced as a result of the first inductor having a reduced electromagnetic field. The image below depicts the relative position of the first inductor and the second inductors in the Samsung 32Q50 Smart TV:

9



**Count II: Claim for Patent Infringement of the '849 Patent**

32. Ericsson repeats and realleges the allegations in paragraphs 1-31 as if fully set forth herein.

33. Samsung has infringed, contributed to the infringement of, and/or induced infringement of the '849 patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '849 Patent, and products which are made by a process covered by one or more claims of the '849 Patent, including, but not limited to, smartphones and other mobile devices. The accused wireless communication devices that infringe one or more claims of the '849 patent include, but are not limited to, at least the Samsung Galaxy S20+5G.

34. For example, at least the Samsung Galaxy S20+5G infringes at least claims 1 and 12 of the '849 patent. Samsung makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices, which are covered by or made by a process covered by the claims of the '849 patent, and thus directly infringes the '849 patent.

10

35.     Samsung indirectly infringes the '849 patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Samsung Galaxy S20+5G, who perform each step of the claimed invention as directed by Samsung. Samsung received actual notice of the '849 patent at least as early as of the filing of this Complaint.

36.     Samsung's affirmative acts of selling the Galaxy S20+5G, causing the Samsung Galaxy S20+5G to be manufactured, and providing directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Samsung Galaxy S20+5G in a manner that directly infringes the '849 patent. Through its manufacture and sales of the Galaxy S20+5G, Samsung performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

37.     Samsung also indirectly infringes the '849 patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Samsung Galaxy S20+5G.

38.     Samsung's affirmative acts of selling the Galaxy S20+5G and causing the Galaxy S20+5G to be manufactured and sold contribute to Samsung's manufacturers, resellers, and end-users making or using the Galaxy S20+5G in a normal and customary way that infringes the '849 patent. The Galaxy S20+5G constitutes the material part of Ericsson's patented invention, has no substantial non-infringing uses, and is known by Samsung to be especially made or especially adapted for use to infringe the '849 patent.

39.     The Samsung Galaxy S20+5G is a mobile communication device having a case and a main printed circuit board within the case for mounting electronic communication components, including an antenna apparatus.

40.     The Samsung Galaxy S20+5G includes an antenna pattern formed of conductive material (metal) located on a specified planar surface of a main printed circuit board, as shown in the image below of the surface of a mmWave communication PCB opposite to the side on which an antenna control circuitry IC is mounted:



41.     The antenna apparatus in the Samsung Galaxy S20+5G includes a ground plane formed of electrically conductive material. For example, a metal plate that is grounded (i.e., a ground plane) is mounted on a separate PCB within the case that encloses the mmWave communication PCB, as shown in the image below:

12



42.     The antenna apparatus of the Samsung Galaxy S20+5G has a mounting device for supporting the ground plane within the case so that the ground plane is in a facing spaced-apart parallel relationship with the antenna pattern and is in a spaced-apart relationship with the printed circuit board. For example, in the Galaxy S20+5G, the mounting device for spacing apart and supporting the mmWave communication PCB and a separate PCB having a ground plane includes a mated connector and interface PCB that is mounted between the mmWave communication PCB and the ground plane on the separate PCB, as shown in the image below:



### Count III: Claim for Patent Infringement of the '823 Patent

43.     Ericsson repeats and realleges the allegations in paragraphs 1-42 as if fully set forth herein.

44.     Samsung has infringed, contributed to the infringement of, and/or induced infringement of the '823 patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '823 Patent including, but not limited to, smartphones and other mobile devices. The accused wireless communication devices that infringe one or more claims of the '823 patent include, but are not limited to, at least the Samsung Galaxy S20+5G.

45.     For example, at least the Samsung Galaxy S20+5G infringes at least claim 15 of the '823 patent. Samsung makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices and thus directly infringes the '823 patent.

14

46.     Samsung indirectly infringes the '823 patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Samsung Galaxy S20+5G, who perform each step of the claimed invention as directed by Samsung. Samsung received actual notice of the '823 patent at least as early as of the filing of this Complaint.

47.     Samsung's affirmative acts of selling the Samsung Galaxy S20+5G, causing the Samsung Galaxy S20+5G to be manufactured, and providing directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Samsung Samsung Galaxy S20+5G in a manner that directly infringes the '823 patent. Through its manufacture and sales of the Samsung Galaxy S20+5G, Samsung performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

48.     Samsung also indirectly infringes the '823 patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers, or end-users of the Samsung Galaxy S20+5G.

49.     Samsung's affirmative acts of selling the Samsung Galaxy S20+5G and causing the Samsung Galaxy S20+5G to be manufactured and sold contribute to Samsung's manufacturers, resellers, and end-users making or using the Samsung Galaxy S20+5G  in a normal and customary way that infringes the '823 patent. The Samsung Galaxy S20+5G constitutes the material part of Ericsson's patented invention, has no substantial non-infringing

uses, and is known by Samsung to be especially made or especially adapted for use to infringe the '823 patent.

50.     The Samsung Galaxy S20+5G is a mobile terminal for a wireless communications system. The Samsung Galaxy S20+5G and its Android 10 operating system comprise a mobile multimedia engine. The Android operating system on the Samsung Galaxy S20+5G is a software services component. The Samsung Galaxy S20+5G includes various hardware components, including a display, camera, memory, audio components, etc. that are controlled by the software services component. For example, the display and audio outputs of the Samsung Galaxy S20+5G are controlled by the software services components that supports the respective video and audio codecs.

51.     The Samsung Galaxy S20+5G includes various multimedia application software, such as Camera, Gallery, and Samsung Voice applications. These applications access the camera, display, and audio input/recording; video playback, audio playback, and display functionality. Additionally, the Android operating system provides a framework for creating certain third-party or OEM camera or media applications to be installed on the Samsung Galaxy S20+5G.

52.     The Samsung Galaxy S20+5G also includes an interface component that corresponds to a JAVA API framework. The JAVA API Framework comprises Android Multimedia framework - android.media, which comprises android.media.MediaCodec and android.media.MediaPlayer for providing at least one multimedia application with access to the mobile multimedia engine (for example, access to low-level media codecs and hardware).

53.     The Java API framework also comprises a middleware services layer including the at least one interface including an application programming interface (API) for loading, installing and running multimedia application software in the multimedia engine.

16

54.    The middleware services layer of the Samsung Galaxy S20+5G's Android operating system isolates the mobile multimedia engine from the multimedia application software except via the at least one interface (the functionalities provided by the framework APIs communicate with system services to access the underlying hardware/resources accessible only through the operating system).

### Count IV: Claim for Patent Infringement of the '178 Patent

55.    Ericsson repeats and realleges the allegations in paragraphs 1-54 as if fully set forth herein.

56.    Samsung has infringed, contributed to the infringement of, and/or induced infringement of the '178 patent by making, using, selling, offering for sale, or importing into the United States, or by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '178 Patent including, but not limited to, Samsung smartphones and other mobile devices and Smart TVs implementing Google Widevine DRM, including Samsung's Samsung Galaxy S20 Ultra, Galaxy S20 5G, Galaxy S20+ 5G, Galaxy S20 Ultra 5G, Galaxy S10 series, Galaxy S7 series, Galaxy S5 series, Galaxy Z Fold2 5G, and Galaxy Fold 512GB mobile phones, Samsung's Galaxy Tab S7, Galaxy Tab S7+, Galaxy Tab S6, Galaxy Tab S6 Lite, Galaxy Tab S5e, Galaxy Tab S4, Galaxy Tab A7 10.4, Galaxy Tab A 8.4, Galaxy Tab A 8.0 Kids Edition, Galaxy Tab A 8.0, Galaxy Tab A 10.1, and Galaxy Tab A 8.0 tablet computers; and The Frame, The Terrace, Q70T, Q80T, Q90T, Q800T, Q900TS, Q900, 32Q50, Q60T, The Sero, The Serif, TU7000, TU8000, TU8300, RU9000, Q50R, N5300, Q950TS, and TU6950 smart TVs ("Samsung Widevine Products").

NG-9J84MDUI 4848-6787-5541v6

57.     For example, Samsung Widevine Products infringe at least claim 1 of the '178 patent. Samsung makes, uses, sells, offers for sale, imports, exports, supplies or distributes within the United States these devices and thus directly infringes the '178 patent.

58.     Samsung indirectly infringes the '178 patent as provided by 35 U.S.C. § 271(b) by inducing infringement by others, such as resellers and end-user customers in this District and throughout the United States. For example, direct infringement is the result of activities performed by manufacturers, resellers, or end-users of Samsung Widevine Products, who perform each step of the claimed invention as directed by Samsung. Samsung received actual notice of the '178 patent at least as early as of the filing of this Complaint.

59.     Samsung's affirmative acts of selling Widevine Products, causing the Samsung Widevine Products to be manufactured, and providing directions, instructions, schematics, diagrams, or designs to its manufacturers, resellers, or end-users to make or use the Samsung Widevine Products in a manner that directly infringes the '178 patent. Through its manufacture and sales of Samsung Widevine Products, Samsung performed the acts that constitute induced infringement with knowledge or willful blindness that the induced acts would constitute infringement.

60.     Samsung also indirectly infringes the '178 patent by contributing to infringement by others, such as resellers and end-user customers, in accordance with 35 U.S.C. § 271(c) in this District and throughout the United States. Direct infringement is the result of activities performed by manufacturers, resellers, or end-users of Samsung Smart TVs.

61.     Samsung's affirmative acts of selling the Samsung Widevine Products and causing the Samsung Widevine Products to be manufactured and sold contribute to Samsung's manufacturers, resellers, and end-users making or using Samsung Widevine Products in a normal

18

and customary way that infringes the '178 patent. Samsung Widevine Products constitute the material part of Ericsson's patented invention, has no substantial non-infringing uses, and is known by Samsung to be especially made or especially adapted for use to infringe the '178 patent.

62.     Samsung Widevine Products implement a method of handling secure distribution of content by supporting Google Widevine DRM with a common encryption API.

63.     Samsung Widevine Products perform the step of initiating a media playback request (e.g., tuning into a live stream) and receiving a playback request response (e.g., the client player receiving a license that corresponds to the live stream).

64.     Samsung Widevine Products perform the step of parsing content information from the playback request response (e.g., "pssh" data blobs being returned), the content information including content encryption keys (keys for the media segment), content encryption key identifiers (e.g., key Ids), and content encryption key expiration times (e.g., each key is associated with a key rotation period).

65.     Samsung Widevine Products perform the step of retrieving content and manifest files from a content delivery server. For example, the Google Widevine DRM system implements on Samsung Widevine Products retrieves content (e.g., video) and a manifest (MPD) from a content delivery network.

66.     Samsung Widevine Products perform the step of detecting content encryption key rotation boundaries between periods of use of different content encryption keys in decrypting retrieved content. For example, with the client encounters a new "pssh" box, it will issue a new license request. The key rotation boundary occurs whenever the client encounters a new "pssh" box, at which point it will issue a new license request and continue to decrypt content.

NG-9J84MDUI 4848-6787-5541v6

67.     Samsung Widevine Products perform the step of issuing requests to a license server ahead of a key rotation boundary to retrieve a second content encryption key to be used after a content encryption key rotation boundary is reached. For example, the client issues a new license request to the license server ahead of a key rotation boundary as it can still decrypt content in a current key period. The client also has keys required to decrypt the new key period, which is a second content encryption key to be used after a content encryption key rotation boundary is reached.

68.     Samsung Widevine Products perform the step of applying the second key for content decryption after the key rotation boundary is reached. For example, once the key rotation boundary is reached, the client applies keys to decrypt content.

### Demand for Jury Trial

Ericsson hereby demands a trial by jury on all claims so triable.

### Prayer for Relief

WHEREFORE, Ericsson respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.  Adjudge that Samsung infringes the Asserted Patents;

B.  Adjudge that Samsung's infringement of the Asserted Patents was willful, and that Samsung's continued infringement of the Asserted Patents is willful;

C.  Award Ericsson damages in an amount adequate to compensate Ericsson for Samsung's infringement of the Asserted Patents, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

D.  Award enhanced damages pursuant to 35 U.S.C. § 284;

20

E.  Award Ericsson pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

F.  Enter an order finding that this is an exceptional case and awarding Ericsson its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.  Enter a permanent injunction against all Samsung products found to infringe the Asserted Patents;

H.  Award, in lieu of an injunction, a compulsory forward royalty;

I.  Order an accounting of damages; and

J.  Award such other relief as the Court may deem appropriate and just under the circumstances.

21

Dated: January 1, 2021.

MCKOOL SMITH, P.C.


/s/ Theodore Stevenson, III
Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas Mathews
Texas State Bar No. 24085457
nmathews@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@McKoolSmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@McKoolSmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (903) 923-9001
Telecopier:

**ATTORNEYS FOR PLAINTIFFS
ERICSSON INC. AND
TELEFONAKTIEBOLAGET LM
ERICSSON**

NG-9J84MDUI 4848-6787-5541v6